1  **WO**

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

8

9  Sheila M. Stevens,                    )    CIV 10-633-PHX-MHB
                                          )
10           Plaintiff,                   )    **ORDER**
                                          )
11  vs.                                   )
                                          )
12  Michael J. Astrue, Commissioner of Social )
    Security,                             )
13                                        )
             Defendant.                   )
14  _____ )

15         Pending before the Court is Plaintiff Sheila M. Stevens' appeal from the Social

16  Security Administration's final decision denying her claim for disability insurance benefits.

17  After reviewing the administrative record and the arguments of the parties, the Court now

18  issues the following ruling.

19                      **I.  PROCEDURAL HISTORY**

20         In January of 2006, Plaintiff filed an application for disability insurance benefits

21  pursuant to Title II of the Social Security Act.  (Transcript of Administrative Record ("Tr.")

22  at 15.)  Her application was denied both initially and on reconsideration.  (Tr. at 15.)  A

23  hearing was held before an Administrative Law Judge ("ALJ") on February 20, 2008.  (Tr.

24  at 15.)  After taking the matter under advisement, the ALJ denied Plaintiff's claim on March

25  27, 2008.  (Tr. at 15-21.)  Plaintiff subsequently requested review of the ALJ's decision by

26  the Appeals Council.  (Tr. at 9.)  On January 22, 2010, the Appeals Council denied Plaintiff's

27  request for review, thereby rendering the ALJ's decision the final decision of the

28

1   Commissioner.  (Tr. at 1.)  Plaintiff then commenced the instant action for judicial review

2   pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

4        The Court must affirm the ALJ's findings if the findings are supported by substantial

5   evidence and are free from reversible legal error.  See Reddick v. Chater, 157 F.3d 715, 720

6   (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence

7   means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might

8   accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401

9   (1971); see Reddick, 157 F.3d at 720.

10       In determining whether substantial evidence supports a decision, the Court considers

11  the administrative record as a whole, weighing both the evidence that supports and the

12  evidence that detracts from the ALJ's conclusion.  See Reddick, 157 F.3d at 720.  "The ALJ

13  is responsible for determining credibility, resolving conflicts in medical testimony, and for

14  resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see

15  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  "If the evidence can reasonably

16  support either affirming or reversing the [Commissioner's] conclusion, the court may not

17  substitute its judgment for that of the [Commissioner]."  Reddick, 157 F.3d at 720-21.

## III.  THE ALJ'S FINDINGS

19       In order to be eligible for disability or social security benefits, a claimant must

20  demonstrate an "inability to engage in any substantial gainful activity by reason of any

21  medically determinable physical or mental impairment which can be expected to result in

22  death or which has lasted or can be expected to last for a continuous period of not less than

23  12 months."  42 U.S.C. § 423(d)(1)(A).  An ALJ determines a claimant's eligibility for

24  benefits by following a five-step sequential evaluation:

25       (1)  determine whether the applicant is engaged in "substantial gainful
         activity";

26

27       (2)  determine whether the applicant has a medically severe impairment or
         combination of impairments;

28

- 2 -

1
2

(3)  determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

3
4

(4)  if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

5
6

(5)  if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

7   See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. § 404.1520). At the

8   fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can

9   perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9ᵗʰ Cir.

10  1993).

11         At step one, the ALJ found that Plaintiff had not engaged in "substantial gainful

12  activity" since her alleged onset date. (Tr. at 17.)  At step two, the ALJ determined that

13  Plaintiff did not have a medically determinable severe impairment. (Tr. at 17-20.) Thus, the

14  ALJ concluded that Plaintiff was not disabled. (Tr. at 20-21.)

15                                         **IV.  DISCUSSION**

16         Plaintiff contends that the ALJ erred in resolving her case at step two of the sequential

17  evaluation process by finding that she did not suffer from "medically determinable

18  musculoskeletal and skin disorders that caused more than a minimal effect on her ability to

19  work."   Specifically, Plaintiff argues that the ALJ erred by (1) rejecting her symptom

20  testimony in the absence of clear and convincing reasons for doing so, and (2) rejecting the

21  assessment of her treating physician, Carolyn Barlow, D.O., who assessed limitations facially

22  inconsistent with the ability to perform sustained work.  Plaintiff requests that the Court

23  remand for a determination of disability benefits.

24         At step two of the sequential evaluation, the ALJ determines whether a claimant

25  suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental

26  ability to do basic work activities.  See 20 C.F.R. § 404.1520(c).  To satisfy step two's

27  requirement of a severe impairment, the claimant must prove the existence of a physical or

28  mental impairment by providing medical evidence consisting of signs, symptoms, and

1  laboratory findings; the claimant's own statement of symptoms alone will not suffice.  See
2  20 C.F.R. § 404.1508.

3  The Commissioner has passed regulations which guide dismissal of claims at step two.
4  Those regulations state an impairment may be found to be not severe when "medical
5  evidence establishes only a slight abnormality or a combination of slight abnormalities which
6  would have no more than a minimal effect on an individual's ability to work."  SSR 85-28.
7  "The severity requirement cannot be satisfied when medical evidence shows that the person
8  has the ability to perform basic work activities, as required in most jobs."  Id.  Basic work
9  activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or
10  handling; seeing, hearing, and speaking; understanding, carrying out, and remembering
11  simple instructions; responding appropriately to supervision, coworkers, and usual work
12  situation."  Id.

13  As explained in the Commissioner's policy ruling, "medical evidence alone is
14  evaluated in order to assess the effects of the impairment(s) on ability to do basic work
15  activities."  SSR 85-28.  Nonetheless, "credibility determinations do bear on evaluation of
16  medical evidence when an ALJ is presented with conflicting medical opinions or
17  inconsistency between a claimant's subjective complaints and [her] diagnosed conditions."
18  Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005).  Where, as here, clinical records and
19  objective medical evidence are inconsistent with afflictions claimed, Plaintiff's credibility
20  is considered at step two.  See id.

21  **1.    Credibility of Plaintiff's Subjective Complaints**

22  In Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986), the Ninth Circuit established two
23  requirements for a claimant to present credible symptom testimony: The claimant must
24  produce objective medical evidence of an impairment or impairments, and he must show the
25  impairment or combination of impairments could reasonably be expected to produce some
26  degree of symptom.  See id. at 1407.  The claimant, however, need not produce objective
27  medical evidence of the actual symptoms or their severity.  See Smolen v. Chater, 80 F.3d
28  1273, 1284 (9th Cir. 1996).

1       If the claimant satisfies the above test and there is not any affirmative evidence of

2 malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and

3 convincing reasons for doing so. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007)

4 (citing Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the

5 claimant's testimony is not credible are insufficient. See id. The ALJ must identify "what

6 testimony is not credible and what evidence undermines the claimant's complaints." Id.

7 (quoting Lester, 81 F.3d at 834).

8       In weighing a claimant's credibility, the ALJ may consider many factors, including,

9 "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

10 prior inconsistent statements concerning the symptoms, and other testimony by the claimant

11 that appears less than candid; (2) unexplained or inadequately explained failure to seek

12 treatment or to follow a prescribed course of treatment; and (3) the claimant's daily

13 activities." Smolen, 80 F.3d at 1284; see Orn v. Astrue, 495 F.3d 625, 637-39 (9th Cir. 2007).

14 The ALJ also considers "the claimant's work record and observations of treating and

15 examining physicians and other third parties regarding, among other matters, the nature,

16 onset, duration, and frequency of the claimant's symptom; precipitating and aggravating

17 factors; functional restrictions caused by the symptoms; and the claimant's daily activities."

18 Smolen, 80 F.3d at 1284 (citation omitted).

19      At the administrative hearing on February 20, 2008, Plaintiff testified that she had

20 been working full-time since January of 2008, and had worked part-time beginning in April

21 of 2006.  (Tr. at 27-30, 42-43.)  She stated that her abdominal pain began in September of

22 2004, (Tr. at 33), and that from November of 2004 to December of 2007, she spent most days

23 lying on the couch with a heating pad because her abdominal pain was so bad she could not

24 stand (Tr. at 34, 35).  She said, during that time, she would go the grocery store monthly with

25 her roommate, but could not stay to check out or carry groceries.  (Tr. at 39.)  Plaintiff

26 indicated that her only social activity was going to someone's house, (Tr. at 39-40), but

27 admitted that she traveled abroad on one occasion (Tr. at 42-43).  She believed her abdominal

28 pain was caused by an "intense infection in [her] intestines," and that she also developed

1   "intestinal ulcers." (Tr. at 36, 40-41, 44-45.)  She said her doctors would not prescribe strong

2   pain medications because they did not know what was causing her pain.  (Tr. at 39.)

3           Having reviewed the record along with the ALJ's credibility analysis, the Court finds

4   that the ALJ made extensive credibility findings and identified several clear and convincing

5   reasons supported by the record for discounting Plaintiff's statements regarding her

6   limitations.  In his evaluation of Plaintiff's testimony, the ALJ first referenced the fact that

7   none of Plaintiff's medical records submitted in support of her claim of disability based on

8   a claim of severe chronic pain reflected a definitive diagnosis.  See Bray v. Astrue, 554 F.3d

9   1219, 1227 (9th Cir. 2009) (inconsistencies between claimant's testimony and the objective

10  medical evidence did not support her the claimant's claims of disabling respiratory illness);

11  Carmickle v. Comm'r of Social Sec., 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction

12  with the medical record is a sufficient basis for rejecting the claimant's subjective

13  testimony.") (citation omitted).  The ALJ stated, in pertinent part:

14          Claimant testified that she believed her pain resulted from an infection.
            However, that pain does not appear to have begun until about 11 months after
15          her initial surgery and just prior to the series of cosmetic surgeries to align her
            body with her gastric bypass.  Claimant testified to several courses of
16          antibiotics during the period of issue, from ten to sixty days.  However, no
            physician has indicated infection as the cause of claimant's alleged pain.
17          Likewise, radiological, CT and MRI examinations have revealed no evidence
            of any medical condition which is severe enough to have prevented the
18          claimant from working as she has alleged.  The claimant has not satisfied the
            12 continuous month requirement necessary for a medical condition to be
19          considered severe as required by the Social Security Act and regulations.

20  (Tr. at 20.)

21          The ALJ additionally discredited Plaintiff's subjective complaints finding that she

22  "alleged incapacitating pain during a period of time when she was undergoing a series of

23  purely cosmetic medical procedures," and noting that said procedures "followed a period of

24  time when she had not been engaged in full time employment for a number of years."  (Tr.

25  at 20); see Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (affirming the ALJ's

26  credibility analysis which was based, in part, on the plaintiff's "extremely poor work

27  history"); Bean v. Chater, 77 F.3d 1210, 1213 (10th Cir. 1995) (claimant's prior work record

28  can be considered in evaluating credibility; ALJ did not err in considering that claimant quit

1   working several years before the alleged onset of disability).  Moreover, the ALJ found that

2   Plaintiff was not prescribed narcotic pain medications stating that there "is no medical basis

3   other than short periods of post surgical recovery for her allegations and no course of

4   treatment or prescribed course of medication consistent with her allegations." (Tr. at 20); see

5   Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (allegations of disabling pain could be

6   discredited by evidence of infrequent medical treatment or the minimal use of pain

7   medication).  To the contrary, Dr. Freedman noted that Plaintiff's abdominal pain responded

8   well to Ultram and over-the-counter Advil.  (Tr. at 174); Crane v. Shalala, 76 F.3d 251, 254

9   (9th Cir. 1996) (an impairment that could reasonably be alleviated by medication or treatment

10  could not serve as a basis for a finding of disability).  Lastly, in discounting her testimony,

11  the ALJ determined that Plaintiff's activities during the period at issue, which included a

12  "full social life and foreign travel" was not consistent with the limitations alleged.  (Tr. at

13  20); see, e.g., Bray, 554 F.3d at 1227 (claimant's daily activities, which included cleaning,

14  cooking, walking dogs, and driving to appointments, did not support allegations of

15  disability).

16          In summary, the ALJ provided a sufficient basis to find Plaintiff's allegations not

17  entirely credible.  While perhaps the individual factors, viewed in isolation, are not sufficient

18  to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor is relevant to the

19  ALJ's overall analysis, and it was the cumulative effect of all the factors that led to the ALJ's

20  decision.  The Court concludes that the ALJ has supported his decision to discredit Plaintiff's

21  allegations with specific, clear and convincing reasons and, therefore, the Court finds no

22  error.

23  \\\

24  \\\

25

26          **2.      Medical Evidence and Opinions**

27

28

- 7 -

1          In determining whether a claimant has a severe impairment, the ALJ evaluates the
2   medical evidence submitted and must explain the weight given to the opinions of accepted
3   medical sources in the record.  Agency regulations distinguish among the opinions of three
4   types of accepted medical sources:  (1) sources who have treated the claimant; (2) sources
5   who have examined the claimant; and (3) sources who have neither examined nor treated the
6   claimant, but express their opinion based upon a review of the claimant's medical records.
7   See 20 C.F.R. § 404.1527.  A treating physician's opinion carries more weight than an
8   examining physician's, and an examining physician's opinion carries more weight than a
9   non-examining reviewing or consulting physician's opinion.  See Benecke v. Barnhart, 379
10  F.3d 587, 592 (9th Cir. 2004); Lester, 81 F.3d at 830.  The Commissioner must provide "clear
11  and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining
12  physician.  See Lester, 81 F.3d at 830.  If the opinion is contradicted, it can be rejected for
13  specific and legitimate reasons that are supported by substantial evidence in the record.  See
14  Andrews, 53 F.3d at 1043.  Since Dr. Barlow's opinion was contradicted by the opinions of
15  the reviewing state agency physicians who opined that Plaintiff did not have severe
16  impairments and the clinical findings of record, the specific and legitimate standard applies.

17         Historically, the courts have recognized the following as specific, legitimate reasons
18  for disregarding a treating or examining physician's opinion: conflicting medical evidence;
19  the absence of regular medical treatment during the alleged period of disability; the lack of
20  medical support for doctors' reports based substantially on a claimant's subjective complaints
21  of pain; medical opinions that are brief, conclusory, and inadequately supported by medical
22  evidence.  See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten v. Secretary
23  of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair v. Bowen, 885 F.2d
24  597, 604 (9th Cir. 1989).

25         Here, the Court finds that the ALJ properly gave specific and legitimate reasons, based
26  on substantial evidence in the record, for discounting the May 24, 2006 opinion of Dr.
27  Barlow.  In November of 2003, Plaintiff had gastric bypass surgery.  (Tr. at 143.)  As of
28

1   September 28, 2004, she had lost over 100 pounds and was interested in "multiple body

2   recontouring procedures." Jeffrey Ptak, M.D., a plastic surgeon, noted that Plaintiff was

3   healthy except for varicose vein disease. He discussed the risks of the procedures he planned

4   to perform in three phases: first, liposuction of the thighs and calves with an arm lift and

5   breast lift; second an abdominal lift with a buttocks and thigh lift; and, finally, an inner thigh

6   lift. (Tr. at 146, 199, 342.)

7           On December 1, 2004, Dr. Barlow cleared Plaintiff for plastic surgery. (Tr. at 278,

8   322.) Dr. Ptak preformed the first set of procedures (liposuction of the thighs, knees, and

9   calves; a breast lift, and an arm lift) on December 14, 2004. (Tr. at 151-52, 185-87, 197,

10  341.) Within the month, Plaintiff was "doing well," and very pleased with her results. (Tr.

11  at 194-95, 340-41.)

12          On December 28, 2004, Plaintiff went to the emergency department with complaints

13  of constipation. An enema relieved her symptoms. (Tr. at 154-57, 332-36.)

14          As of January 5, 2005, Plaintiff was continuing to heal and "doing very well." Dr.

15  Ptak noted that he would proceed with the second set of procedures. (Tr. at 189, 339.)

16          In January of 2005, Nick Morrison M.D., performed a procedure to correct Plaintiff's

17  varicose veins and associated venous insufficiency, (Tr. at 165, 173, 331, 339), and Dr. Ptak

18  later aspirated a seroma in Plaintiff's left arm incision (Tr. at 167, 339).

19          On February 22, 2005, Dr. Ptak performed the second set of procedures (buttocks,

20  thigh, and abdominal lift with hernia repair). (Tr. at 141, 143-45, 166, 181-82.) On February

21  23, 2005, she complained of discomfort (Tr. at 142), but was feeling better the next day (Tr.

22  at 142). By March of 2005, she was "very pleased" with her results. (Tr. at 164-65, 338-39.)

23          On May 6, 2005, Plaintiff saw Dr. Barlow for stomach muscle pain. She stated that

24  she had experienced abdominal pain since October 2004, and that injections had helped. Dr.

25  Barlow prescribed Levsin (medication to decrease stomach motion) and ordered tests. (Tr.

26  at 277, 318.) An abdominal ultrasound was unremarkable except for a possible kidney stone

27  (Tr. at 158, 169, 178, 276, 287, 317), and an abdominal CT scan was unremarkable except

28  for small liver cysts (Tr. at 159, 169, 179-80, 276, 285-86, 317).

1           Later in May of 2005, Dr. Ptak noted that Plaintiff had "a very nice result" post

2   operatively and would have an inner thigh lift in the fall. (Tr. at 163, 338.)  A few days later,

3   Bruce Freedman, M.D., wrote a letter to Dr. Barlow.  Dr. Freedman indicated that he had

4   seen Plaintiff for her complaints of chronic abdominal pain, noting that her symptoms did not

5   begin until well-after her previous surgeries.  He also noted that her CT scan was "extremely

6   unremarkable."  He concluded her pain might be "musculoskeletal based on all her previous

7   surgery, especially in light of the fact that it seems to respond well to Advil and Ultram ...

8   ."  He said it was also possible the pain was from adhesions, which would be "very difficult

9   to prove."  He recommended a colonoscopy, trigger point injections, and an abdominal

10  ultrasound.  (Tr. at 174, 229, 329, 312.)

11          On June 9, 2005, Dr. Barlow treated Plaintiff for a urinary tract infection.  (Tr. at 168,

12  275, 316.)  Later that month, Plaintiff saw Dr. Ptak with complaints of abdominal pain.

13  Examination showed "a little bit of point tenderness."  Dr. Ptak felt she might have small

14  neuromas in her incision, and suggested she return when they were tender.  He said her

15  symptoms should otherwise improve over time.  (Tr. at 161, 338.)  Later in June of 2005,

16  Plaintiff saw Derek Landan, M.D., for complaints of abdominal pain and constipation since

17  December of 2004.  He scheduled a colonoscopy.  (Tr. at 226-28, 236-38, 324, 325-26.)

18          On July 6, 2005, Dr. Landan noted that Plaintiff's colonoscopy, (Tr. at 239-40, 327-

19  28), showed hemorrhoids and a few diverticula that were "not of an great concern."  He

20  prescribed Zelnorm for constipation. (Tr. at 233-35, 323.)  Plaintiff also continued to follow

21  up with Dr. Barlow for abdominal pain complaints from September of 2005 to January of

22  2006.  (Tr. at 269-74, 308-11, 313-15.)  In early April of 2007, Dr. Barlow noted that

23  "Aciphex worked then quit working."  She adjusted Plaintiff's medications.  (Tr. at 307.)

24          On April 27, 2006, Steven Otto, M.D., a state agency physician, reviewed the

25  evidence and concluded that Plaintiff did not have any severe impairments.  (Tr. at 298.)

26          On May 24, 2006, Dr. Barlow referred Plaintiff to a gastrointestinal specialist for

27  abdominal pain.  (Tr. at 306.)  Dr. Barlow also checkmarked boxes indicating Plaintiff had

28  "Moderately Severe" pain, (Tr. at 302), that could "reasonably be expected to result from

1   objective clinical or diagnostic findings" (Tr. at 302).  She said movement/overuse, stress,

2   and unknown factors exacerbated Plaintiff's pain, (Tr. at 302), and that Plaintiff's pain would

3   cause deficiencies in concentration, persistence, or pace "[f]requently" (Tr. at 303).  She also

4   wrote a letter stating Plaintiff had been "unable to sustain work for eight hours per day, five

5   days per week since December, 2004" due to abdominal pain.  (Tr. at 301.)

6         On August 15, 2006, Plaintiff complained of a headache and chest tightness.  The

7   treatment provider order tests.  (Tr. at 398.)

8         On August 28, 2006, Dr. Ptak responded to Plaintiff's request to review her medical

9   records for complaints of abdominal pain during the fall of 2004.  He stated,

10        [T]o my best recollection, as is reflected in my progress note, it was a very
          generic consultation covering a lot of territory and options for surgery after her
11        extreme weight loss, but no discussion of abdominal pain occurred.  She, in
          fact, put the abdominal and buttock procedure behind in terms of importance.
12        ... I do not have any recollection or notes reflecting discussion of abdominal
          pain between December [2004] and February 22, 2005, when she underwent
13        her second staged procedure. ... She presented in my office on June 16, 2005,
          describing some crampy upper mid epigastrium pain and stated that she had
14        seen her internist who was prescribing a GI work-up.  To my exam on that day
          there were very nonspecific and very minimal findings that would relate to a
15        surgical etiology of any abdominal wall discomfort.

16  (Tr. at 337.)

17        In October of 2006, Plaintiff complained of weight gain and tiredness, and had

18  elevated blood pressure.  (Tr. at 395.)

19        On November 1, 2006, Ray Hughes, M.D., a state agency physician, reviewed the

20  evidence and concluded that Plaintiff did not have any severe impairments.  (Tr. at 343.)

21        As of January 2007, Plaintiff was working part-time and "lov[ed] it."  (Tr. at 378-79.)

22  The next month, she complained of right knee pain and leg cramps, and wanted to lose

23  weight. (Tr. at 383.)  She later saw cardiologist Chris Geohas, M.D., for chest pain and heart

24  palpitations, but was in no acute distress and her abdominal exam was benign.  Dr. Geohas

25  said Plaintiff's chest pain was likely non-cardiac.  (Tr. at 349-50.)

26        In March of 2007, Plaintiff's complaints to Dr. Barlow included stomach pain.  (Tr.

27  at 375-77.)   In April of 2007, Dr. Barlow noted that Plaintiff was undergoing more

28  liposuction in July, but was "going to England and other travels in May."  (Tr. at 372-73.)

- 11 -

1   The next month, Dr. Barlow saw Plaintiff for a pre-operative evaluation, and noted that her

2   abdominal pain was "controlled" on Prevacid. (Tr. at 367-69.) During late 2007, Plaintiff

3   saw Dr. Barlow with complaints including insomnia and allergies. (Tr. at 356-66.) A

4   physical evaluation in January of 2008 was unremarkable; Plaintiff was in no acute distress

5   and had normal heart rate and heart rhythm, normal heart sounds, normal breath sounds,

6   normal bowel sounds, and no abdominal tenderness. (Tr. at 351-55.)

7       After summarizing the medical evidence, the ALJ assessed Dr. Barlow's May 2006

8   opinion and found that Dr. Barlow failed to set forth any medically determinable impairment

9   which could reasonably result in such limitations. The ALJ stated, "Dr. Barlow has simply

10  accepted the claimant's subjective allegations of pain and adopted them as her opinion. As

11  such, the undersigned rejects Dr. Barlow's medical source statement." (Tr. at 19.) The ALJ

12  continued stating:

13      The undersigned notes that, despite numerous diagnostic tests, the medical
        evidence does not contain any definitive objective medical evidence which
14      might reasonably limit the claimant's residual functional capacity. In this
        regard, the undersigned notes that Dr. Barlow also prepared a medical source
15      pain questionnaire statement and determined that the claimant had "moderately
        severe" pain in May 2006. Since the medical evidence, including Dr. Barlow's
16      clinical records, reflect no objective signs of the effects of long-term severe
        chronic pain – such as muscle atrophy, recurrent muscle spasm[,] motor[]
17      function loss, range of movement restriction and the claimant has not been
        prescribed narcotic pain medication, Dr. Barlow's conclusions appear to be
18      mere adoptions of the claimant's subjective allegations, the truth of which
        depend on her credibility.

19
(Tr. at 19.)
20
        The ALJ is tasked with determining credibility and resolving conflicts in medical
21
    testimony, not this Court. See Andrews, 53 F.3d at 1039. "The ALJ need not accept an
22
    opinion of a physician ... if it is conclusionary and brief and is unsupported by clinical
23
    findings." Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). When "the evidence is
24
    susceptible to more than one rational interpretation," this Court "must uphold the ALJ's
25
    decision." Andrews, 53 F.3d at 1039-40.
26
        In light of the medical evidence, the ALJ reasonably found that Plaintiff's abdominal
27
    pain was not a medically determinable severe impairment and reasonably discounted Dr.
28

1  Barlow's opinion to the contrary as being based on Plaintiff's subjective complaints – which,

2  as previously discussed, the ALJ properly found as not credible.  See Tonapetyan v. Halter,

3  242 F.3d 1144, 1149 (9th Cir. 2001) (since the record supported the ALJ's credibility finding,

4  he was free to disregard opinion that was premised on subjective complaints) (citing Fair,

5  885 F.2d at 605).  Further, as the Court has demonstrated, Dr. Barlow's opinion was

6  contradicted by the opinions of the reviewing state agency physicians and the clinical

7  findings of record. Thus, substantial evidence supports the ALJ's determination that Plaintiff

8  did not have a medically determinable impairment that had more than a minimal effect on

9  her ability to perform basic work activities.

10                                    **V.  CONCLUSION**

11       Substantial evidence supports the ALJ's decision to deny disability benefits in this

12  case. The ALJ properly discredited Plaintiff's subjective testimony of her symptoms and set

13  forth specific and legitimate reasons for rejecting the testimony of Dr. Barlow.

14  Consequently, the ALJ's decision is affirmed.  Based upon the foregoing discussion,

15       **IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social

16  Security be affirmed;

17       **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment

18  accordingly.  The judgment will serve as the mandate of this Court.

19       DATED this 29th day of March, 2011.

20

21  _____

22                    Michelle H. Burns
                    United States Magistrate Judge

23

24

25

26

27

28